UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOSEPH M. WRIGHT,

        Plaintiff,                  CASE NUMBER: 06-12289
                                                  HONORABLE VICTORIA A. ROBERTS

v.

CHARLES DUNN, et al,

        Defendants.
_____/

## ORDER

**I.    INTRODUCTION**

This matter is before the Court on Defendants' Motion to Dismiss Pursuant to FED. R. CIV. P. 9(b) and 12(b)(6) filed on March 27, 2007 (Doc. #33) and Plaintiff's Response to Defendant's Motion to Dismiss and Motion to Amend Complaint Pursuant to FED. R. CIV. P. 15(a) filed on April 6, 2007 (Doc #37). For the following reasons, the Court **GRANTS** in part and **DENIES** in part Defendants' Motions. Plaintiff's Motion to Amend is **GRANTED** in part.

**II.    BACKGROUND**

Plaintiff filed a complaint against several Defendants alleging: (1) Racketeering ("RICO"), based on 18 U.S.C. §§ 1961 and 1962; (2) Racketeering and Conspiracy, based on 18 U.S.C. § 1962(c); (3) Slander, Libel, and Conspiracy; (4) Malfeasance, Nonfeasance, Breach of Fiduciary Duties and Fraud; and (5) Breach of Contract and

1

Breach of Implied Contractual Duty of Loyalty, Good Faith and Fair Dealing.  Pursuant to motions to dismiss, the Court found that Plaintiff failed to state a claim against Defendants Rev. C. James Holley ("Holley'), Michael Lagnas, and Little Rock Baptist Christian Care, Inc.  ("LRC") and dismissed those defendants.  Plaintiff also filed suit against Charles Dunn ("Dunn"), Sandra Bowman ("Bowman"), Metro Management Inc. ("Metro"), and Bettie Cotton ("Cotton," collectively "Defendants") and those claims remained.  On March 27, 2007, these remaining Defendants filed a motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6) and 9(b).  In response, Plaintiff filed a motion to amend his complaint to: (1) reinstate Holley as a defendant; (2) include three new defendants; and (3) plead fraud with sufficient particularity.  Plaintiff also purported to respond to Defendants' motion to dismiss; however, he did not address any of the arguments raised in Defendants' motion.  At the request of the Court, Plaintiff filed a supplemental response to Defendants' motion.[1]

      This case arises out of actions that occurred during the operation of LRC, a nursing home.  Defendant Dunn owned a nursing home, Ambassador Nursing Home, d/b/a Pembrook Nursing Home ("Pembrook).  On April 16, 2004, Defendant Dunn sold Pembrook to LRC, and the land on which the nursing home was sited, to a nonprofit, Little Rock Baptist Nursing Centers ("LRNC").  Metro contracted to provide administrative services.  Plaintiff was the chief operating officer ("COO") of LRC. Plaintiff claims he received a 30% ownership interest in LRC for carrying out his duties

---

[1] Defendants requested the Court to sanction Plaintiff under FED. R. CIV. P. 11 for filing the supplemental response.  Because the Court requested the supplemental pleading, no sanctions will be imposed.

as COO. Defendant Holley, the minister of LRC, owned 35%. The remaining ownership interest was divided among others.

Plaintiff contends that LRC was profitable under his management. Meanwhile, Dunn orchestrated a criminal enterprise to undermine LRC's success. Plaintiff alleges that Dunn did this by triggering defaults in LRC's land contract and stock purchase agreements so that he could reclaim the business and the property.

On October 26, 2005, Dunn allegedly removed Plaintiff from LRC's payroll. In protest, Plaintiff resigned from all positions at LRC. Plaintiff alleges that a part of Dunn's "scheme" included taking steps to change the signatory on various banks accounts of LRC so that Plaintiff would no longer have access. In addition, Dunn allegedly submitted fraudulent mortgage applications on behalf of LRC, thereby precluding LRC from borrowing funds to pay off its land contract. While Plaintiff's complaint primarily raises accusations against Dunn, Plaintiff alleges that the other Defendants participated in this "scheme." He seeks to include Pembrook, LRNC, and LRC's Board of Directors as co-conspirators. Plaintiff''s amended complaint, however, states no allegations against Pembrook or LRNC.

### III. STANDARD OF REVIEW

Rule 12(b)(6) permits dismissal of a lawsuit for failure to state a claim upon which relief could be granted. *See* FED. R. CIV. P. 12(b)(6). The Rule requires the Court to "construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of the claims that would entitle [Plaintiff to] relief."

3

*Harbin-Bey v. Rutter*, 420 F.3d 571, 575 (6th Cir. 2005).  The Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim.  *Conley v. Gibson*, 355 U.S. 41, 47 (1957).  However, "to avoid dismissal under Rule 12(b)(6), a complaint must contain either direct or inferential allegations with respect to all the material elements of the claim."  *Wittstock v. Mark a Van Sile, Inc.*, 330 F.3d 899, 902 (6th Cir. 2003).

Rule 9(b) provides that "[i]n all averments of fraud . . . the circumstances constituting fraud . . . shall be stated with particularity."  FED. R. CIV. P. 9(b).  The Rule serves to put defendants on notice of the conduct complained of by the plaintiff to ensure that they are provided sufficient information to formulate a defense.  *Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 679 (6th Cir. 1988).  The Sixth Circuit interprets the particularity requirement "liberally, . . . requiring a plaintiff, at a minimum, to allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud.  *Coffey v. Foamed L.P.*, 2 F.3d 157, 162 (6th Cir. 1993)(internal citations and quotations omitted); *Blount Fin. Serv., Inc. v. Walter E. Heller and Co.*, 819 F.2d 151, 152 (6th Cir. 1987)("Fraud alleged in a RICO civil complaint for mail fraud must state with particularity the false statement of fact made by the defendant which the plaintiff relied on and the facts showing the plaintiff's reliance on defendant's false statement of fact."); *see also Evans v. Pearson Enter., Inc.*, 434 F.3d 839, 825-853 (6th Cir. 2006) (affirming dismissal of fraud action where plaintiff failed to plead reliance with particularity as required by Rule 9(b)).

In ruling upon a motion to dismiss under Rule 9(b) for failure to plead fraud with

4

particularity, a court must factor in Rule 8.  Rule 8 requires a "short and plain statement of the claim," and calls for "simple, concise, and direct" allegations.  Fed. R. Civ. P. 8.  The Sixth Circuit stated that "Rule 9(b)'s particularity requirement does not mute the general principles set out in Rule 8; rather, the two must be read in harmony."  *Michaels Bldg. Co. v. Ameritrust Co.*, 848 F.2d 674 (6th Cir. 1988).

Therefore, "courts should not be 'too exacting' or 'demand clairvoyance from pleaders' in determining whether the requirements of Rule 9(b) have been met."  *Id.* at 681.  Instead, if the defendant has fair notice of the charges against him, Rule 9(b) is satisfied.  *Id.* at 680.  A district court, however, need not accept claims that consist of no more than mere assertions and unsupported or unsupportable conclusions.  *See Sanderson v. HCA-The Health Care Co.*, No 04-6342, 447 F.3d 873, 2006 WL 1302479, *2 (6th Cir. 2006).

## IV.  APPLICABLE LAW AND ANALYSIS

### A.  MOTION TO AMEND COMPLAINT

The Court dismissed several defendants.  Plaintiff now seeks to amend his complaint to add parties and claims, and to reinstate claims against Holley and LRC.

Federal Rule of Civil Procedure 15(a) provides that a party may file an amended complaint "only by leave of court or by written consent of the adverse party." FED. R. CIV. P. 15(a).  The Federal Rules embrace "a liberal policy of permitting amendments." *Inge v. Rock Fin. Corp.*, 388 F.3d 930, 937 (6th Cir. 2004)(citing *Ellison v. Ford Motor Co.*, 847 F.2d 297, 300 (6th Cir. 1988)).  Rule 15(a) provides that such "leave shall be freely given when justice so requires." *Id.*  However, a motion to amend a complaint will be denied if the amendment was unduly delayed, made in bad faith or with dilatory

5

motive, would cause undue prejudice to the opposing party, or would be futile. *See* FED. R. CIV. P. 15(a); *Forman v. Davis*, 371 U.S. 178, 183 (1962); *Leary v. Daeschner*, 349 F.3d 888, 905 (6th Cir. 2003). The controlling factor is "futility" and the Court "may deny a motion for leave to amend a complaint if such complaint, as amended, could not withstand a motion to dismiss." *Warren v. Mfr. Nat'l Bank of Detroit*, 759 F.2d 542, 546 (6th Cir. 1985)(citing *Neighborhood Dev. Corp. v. Advisory Council on Historic Preservation*, 632 F.2d 21, 23 (6th Cir. 1980)).

Plaintiff's motion includes virtually no argument supporting leave under Rule 15(a). Plaintiff does not address the issues of delay, prejudice to opposing party, or futility. Instead, he merely states that leave should be freely given because of the nature of his claims, and under FED. R. CIV. P. 54(b), this Court may amend its previous Order.

The Court reviewed Plaintiff's First Amended Complaint. Plaintiff proposes to add three new defendants: LRNC, the LRC Board of Directors, and Pembrook, and three new claims: tortious interference; breach of fiduciary duties; and shareholder oppression. The new claims directed at the new parties and Dunn allege that Defendants conspired to tortiously interfere with Plaintiff's business relationship and oppress him as a minority shareholder. Plaintiff also attempts to better describe his fraud and RICO claims. However, much like Plaintiff's first complaint, these allegations are not stated with particularity and only generally allege that Defendants defrauded and oppressed Plaintiff through an unlawful scheme.

Moreover, as discussed more fully below, most of Plaintiff's allegations are simply insufficient to state a claim. To allow Plaintiff to amend his complaint would be

6

futile. Further, because the Court dismissed both Holley and LRC, Plaintiff cannot reinstate them as defendants under Rule 15. Plaintiff also cannot include the LRC board of directors as a defendant; the board is not a legal entity and Plaintiff does not purport to sue the directors in their individual capacities.

For these reasons, the Court finds that Holley, LRC, the LRC Board, LRNC, and Pembrook are not proper parties to this suit.

Plaintiff did include one viable claim– tortious interference. The Court will allow him to amend his complaint to include this claim.

**B.     Motion to Dismiss**

      **1.     RICO CLAIMS** (Counts I and II)

Plaintiff's RICO claims are primarily directed against LRC. Plaintiff claims that certain Defendants allegedly engaged in a pattern of racketeering activity, in violation of 18 U.S.C. §§ 1961(1)(a), (4), (5); 1962(c); 1341 and 1343: by overpaying for services, conspiring to undermine the profitability of LRC[2], and, conspiring to exclude Plaintiff from working for, or holding stock ownership in, LRC.

To establish a RICO violation, Plaintiff must show that the Defendants engaged in "(1) conduct, (2) of an enterprise (3) through a pattern (4) of racketeering activity."

---

[2] Plaintiff claims Dunn and the other Defendants undermined LRC's profitability by: (1) presenting false financial statements with mortgage loan applications; (2) failing to prioritize current accounts payable over accounts payable liabilities previously incurred by Dunn; (3) violating vendor contracts and incurring new more expensive vendor liabilities; (4) increasing labor expenses without justification; (5) Dunn continuing to charge for "consulting" fees through Metro; (6) mismanaging and settling lawsuits without proper authority in a manner adverse to the interests of LRC; (7) directing LRC not to accept patients and to direct any new patients to a nursing home in which Dunn owned an interest; and (8) refusing to pay LRC's debts.

7

*Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985). "In addition, the plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property by the [predicate acts] constituting violation." *Id.*

Plaintiff lack standing to bring a RICO claim for wrongs that injured LRC. *Frank v. D'Ambrosi*, 4 F.3d 1378, 1385 (6th Cir. 1993); *see also Warren v. Mfr. Nat'l Bank of Detroit*, 759 F.2d 542, 544 (6th Cir. 1985). In *Frank*, the Sixth Circuit held that actions for injuries against corporations may only be brought in the name of the corporation and not by shareholders in a direct suit. *Id*. It follows that Plaintiff's RICO claim cannot be based on the "undermined profitability" of LRC.

Rather, Plaintiff must show that Defendants injured *his* property or business by "at least two acts of racketeering activity, one of which occurred after the effective date of [RICO] and the last of which occurred within ten years . . . after commission of a prior act of racketeering activity." 18 U.S.C. § 1962 (c), § 1961(5). Plaintiff must also show that "the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity." *H.J., Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229 (1989). Plaintiff fails to establish the elements of his RICO claim because: (1) he does not demonstrate a predicate criminal RICO violation; and (2) he does not allege injury to his business or property.

Plaintiff claims a pattern of racketeering predicated on mail and wire fraud, but he does not articulate the specifics of his claim. For example, Plaintiff asserts that Defendants committed mail and wire fraud by "multiple acts of racketeering activity" and that "each act was related in purpose, or scheme" to "defraud" and "victimiz[e] persons such as plaintiff." There are no other allegations.

8

Courts repeatedly hold in RICO cases alleging mail and wire fraud as the "predicate acts," that the underlying fraudulent activities must be pled with particularity. *Gotham Print, Inc. v. Am. Speedy Printing Centers, Inc.*, 863 F.Supp. 447, 457 (E.D.Mich. 1994). Federal Rule of Civil Procedure 9(b) further requires that in such RICO cases, specific allegations as "to *which* defendant caused *what* to be mailed (or made which telephone calls), and *when* and *how* each mailing (or telephone call) furthered the fraudulent scheme." *Id.* at 458. Where plaintiff's have fail to plead fraud within the requirements of 9(b), Courts dismiss the RICO claim. *Id.*; *Advocacy Organization for Patients & Providers v. Auto Club Ass'n*, 176 F.3d 315 (6th Cir. 1999). Plaintiff's conclusory allegations neither meet the requirements of 9(b) nor establish predicate acts upon which to base a RICO claim.

Moreover, the allegations set forth in the amended complaint fail to cure these deficiencies. In his amended complaint, which only alleges RICO claims against Dunn, Metro, Holley, and LRC's Board, Plaintiff still fails to address the time, place, subject matter, or individuals who – through the use of mail or wire – made fraudulent statements. Plaintiff does not identify mail fraud as the predicate criminal act. Nor does he specifically identify any statutory predicate acts committed by Dunn and Metro. He only states that Defendants generally engaged in "racketeering" and the Court's jurisdiction is based on 18 U.S.C. § 1961.

Only those acts identified in 18 U.S.C. § 1961(1) can constitute predicate offenses for RICO violations. Plaintiff's failure to cite a statutory section further demonstrates he has not established a RICO violation on the basis of Dunn's and Metro's alleged kickbacks, consulting fees, or conspiracy to exclude him.

Plaintiff alleges that Holley committed acts itemized in "19 (sic) U.S.C. 1961(1)(A) and (B) in violation of 18 U.S.C. 1962(d), including but not limited to: mortgage fraud; bank fraud; tax fraud (wire fraud); uniform fraudulent transfers against creditors; and securities fraud." However, Plaintiff's allegations (liberally read) demonstrate potential injury to LRC, not him. It is clear that Plaintiff, an attorney, and his counsel misunderstand the law. Absent predicate offenses and allegations to support such offenses, Plaintiff insufficiently alleges a foundation for RICO violations.

Further, his complaint is devoid of facts demonstrating an enterprise between Defendants. *See Vandenbroeck v. Commonpoint Mortgage Co.*, 210 F.3d 696, 699 (6th Cir. 2000)(stating "simply conspiring to commit a fraud is not enough to trigger [RICO] if the parties are not organized in a fashion that would enable them to function as a racketeering organization for other purposes."). To prove the existence of an enterprise, Plaintiff alleges that Defendants combined to form an association-in-fact. To meet the enterprise requirement, an association-in-fact must be an ongoing organization, its members must function as a continuing unit, and it must be separate from the pattern of racketeering activity in which it engages. *Id.*; *see Frank v. Ambrosi*, 4 F.3d 1378, 1386 (6th Cir. 1993). Plaintiff has not alleged any activity that would show an ongoing organization among Defendants.

Neither does Plaintiff sufficiently allege injury to his property or business. The only injury that may be gleaned from Plaintiff's complaint is that he was forced to resign due to the "alleged" scheme, and lose his stock ownership interest. In his amended complaint, Plaintiff appears to argue (he does not explicitly state so in his racketeering counts) that the racketeering scheme caused him to relinquish his employment, monthly

income of approximately $4,000.00, and stock ownership in LRC. However, Plaintiff fails to demonstrate sufficient injury in support of his RICO claims because none of Defendants alleged actions -- the alleged causes of Plaintiff's injury -- constitutes a predicate RICO offense.

Without predicate offenses and an enterprise, Plaintiff cannot prove either injury or a nexus between his alleged injury and the alleged actions of the enterprise. Therefore, the Court dismisses Plaintiff's RICO claims.

2. **Slander, Libel, and Conspiracy (Count III)**

In Count III, Plaintiff asserts a claim for slander and libel. Plaintiff argues that Dunn engaged in a conspiracy with Holley to slander Olivia Boykins, a minority shareholder.

It is well settled that Plaintiff cannot establish a claim for slander and libel for a statement that did not concern him. *Gonyea v. Motor Parts Fed. Credit Union*, 192 Mich. App. 74, 480 N.W.2d 297, 299 (Mich. App. 1991). Perhaps recognizing this, Plaintiff withdraws this claim from his amended complaint.

Accordingly, Count III, which named all Defendants, is **DISMISSED**.


3. **Malfeasance, Nonfeasance, Fraud, and Breach of Fiduciary Duties** (Count IV)

Count IV of Plaintiff's Complaint asserts a claim for malfeasance, nonfeasance, breach of fiduciary duties, and fraud. Plaintiff does not state allegations against Cotton or Bowman. Therefore, the Court grants their Motion to Dismiss this Count.

Most of Plaintiff's allegations reference Holley.[3] Only one paragraph specifically references Dunn and Metro. In paragraph 36, Plaintiff claims that "Defendants Dunn and Metro have engaged in a scheme to defraud the shareholders of Little Rock for their own personal benefit, and have taken unauthorized actions as Little Rock's 'consulting agents,' in an effort to undermine the financial viability of Little Rock."

Thus, Plaintiff's only claim is that Metro and Dunn engaged in fraud. This is supported by Plaintiff's omission of claims of malfeasance and nonfeasance from his amended complaint. In his amended complaint, Plaintiff alleges fraud against Dunn, Metro, Pembrook, LRC, and the LRC Board. Plaintiff also claims that these Defendants misrepresented corporate accounts and payments as legitimate expenditures and conducted a "straw sale" of the property.

Plaintiff fails to state a claim in both complaints. The premise of Plaintiff's fraud claim is that Dunn (along with others) entered into a fraudulent land contract and fraudulent business transactions with or on behalf of LRC, which resulted in Plaintiff being defrauded out of his employment and stock ownership.

To allege intentional fraud, a plaintiff must point to "misrepresentations or omissions which were 'reasonably calculated to deceive persons of ordinary prudence and comprehension.'" *Kenty v. Bank One, Columbus, N.A.*, 92 F.3d 384, 390 (1990)(citing *Blout Fin. Servs., Inc. v. Walter E. Heller & Co.*, 819 F.2d 151, 153 (6th Cir. 1987). Most important, Plaintiff "must allege with particularity a false statement of fact made by the defendant which the plaintiff relied on" and facts showing plaintiff's reliance

---

[3]The Court dismissed these claims against Holley in its March 22, 2007 Order.

upon the false statement of fact. *Id.*

Plaintiff does not specify any false statements made to him by Dunn or Metro upon which he relied. Therefore, he fails to meet his burden to plead fraud with particularity. In short, Plaintiff's vague and conclusory allegations are insufficient to state a valid fraud claim.

### 4. Breach of Contract, Breach of Implied Contractual Duty of Loyalty, Good Faith and Fair Dealing (Count V)

Plaintiff's allegations in Count V are equally insufficient to state a claim for breach of contract. Plaintiff alleges that Dunn, Bowman, and Metro breached their contractual obligations by conspiring to close LRNC's checking accounts. He also claims that Dunn breached his fiduciary duties to LRC and its shareholders by undermining the financial viability of LRC. Given that these are the only allegations in Count V of the original complaint, the Court is unable to determine the nature of Plaintiff's "breach of contract" claim. As noted by Defendants, Plaintiff's complaint is devoid of any facts stating the subject matter of the contract, the parties, or the terms.

To state a breach of contract claim under Michigan law, a plaintiff must set forth the elements of a valid contract -- (1) parties are competent to contract; (2) a proper subject matter; (3) legal consideration; (4) mutuality of agreement; and (5) mutuality of obligation. *Brown v. Village Green Mgmt Co.*, 342 F.3d 620, 628 (6th Cir. 2003). Once a plaintiff alleges the existence of a valid contract, then the Plaintiff must set forth facts demonstrating how the defendant breached the terms of the contract and caused the plaintiff injury. *Id.* Plaintiff does not plead any of these necessary elements. Without these basic allegations, the Court must dismiss this claim.

13

The Court must dismiss Plaintiff's breach of loyalty, good faith and fair dealing claims for the same reasons. His single sentence allegation concerning Dunn's breach of duties to LRC fails to set forth the material elements of the claim. Moreover, Plaintiff does not have a cause of action against Dunn for alleged wrongs to LRC which may have indirectly injured him. Therefore, the Court dismisses this claim.

### 5. Other Claims in Amended Complaint

#### a. Violations of the Michigan Business Corporation Act

In Counts II and III of his amended complaint, Plaintiff alleges violations of the Michigan Business Corporation Act ("MBCA"). When a shareholder alleges that a defendant breached his or her fiduciary duty by allowing diminution of corporate assets, the injured shareholder must file a shareholder derivative action. "The minimum requirements for such a suit are proof of fraud or abuse of trust in the board of directors of the corporation in failing or refusing to enforce a corporation right or claim, plus demand on said board by the stockholder for such action or proof that the demand would be useless." *Futernick v. Statler Builders, Inc.*, 365 Mich. 378, 387 (Mich. 1961). Plaintiff fails to allege any of these facts.

Yet, He argues that under MCBA sections 450.1489 and 450.1541(a), his rights as a minority shareholder were oppressed and Holley, LRC, the LRC Board, and Dunn breached their fiduciary duties by, *inter alia*, rescinding his stock without compensation and misappropriating corporate assets.

To state claims under the MBCA, Plaintiff must establish that the acts of those in control of the corporation are "illegal, fraudulent, or willfully unfair and oppressive." M.C.L.A. § 450.1489(1). To establish a breach of statutory fiduciary duty, Plaintiff must

show that Defendants, as the controlling shareholders of LRC, failed to discharge their fiduciary duties to the minority shareholders in good faith, with the care of an ordinarily prudent person in similar circumstances and in a manner reasonably believed to be consistent with the best interests of the corporation. *See* M.C.L. § 450.1541(a)(1).

There are several differences between suits brought pursuant to § 450.1489 and § 450.1541(a). Most notably, suits under § 450.1489 seek to redress oppression that injures either the corporation or the shareholder; suits under § 450.1541(a) seek to redress wrongs to the corporation. Plaintiffs typically bring § 450.1541(a) suits as derivative actions under M.C.L. § 450.1492(a) on behalf of the corporation. In addition, the plaintiff in a § 450.1541(a) suit may be either a current or former shareholder. But a plaintiff in a § 450.1489 suit must be a current shareholder and may bring the suit in a direct or individual capacity.

The Michigan Court of Appeals held that a plaintiff cannot state a claim under M.C.L. § 450.1489 if he is not a current shareholder. *Irish v. Natural Gas Compression Sys.*, No. 266021, 2006 WL 2000132 (Mich. App. 2006)(unpublished). In *Irish*, the plaintiff's shares were cancelled incident to a merger, and plaintiff ceased to be a shareholder. He was not a shareholder when he sued. The Court stated that "plaintiffs in a § [1]489 suit may only be current shareholders." *Id.* (citing *Estes v. Idea Engineering & Fabricating, Inc.*, 250 Mich. App. 270, 282 (2002)).

Since Plaintiff's stock was allegedly rescinded by Defendants prior to this lawsuit, he does not satisfy the standing requirement to bring an individual or direct shareholder suit under M.C.L. § 450.1489.

Further, Plaintiff has no standing to derivatively pursue a breach of fiduciary duty

15

claim. A shareholder's authority and standing under the MBCA to raise claims by means of a derivative action are governed by M.C.L. § 450.1492(a), which provides:

> A shareholder may not commence or maintain a derivative proceeding unless the shareholder meets all of the following criteria:
>
> (a) The shareholder was a shareholder of the corporation at the time of the act or omission complained of or became a shareholder through transfer by operation of law from one who was a shareholder at that time.
> (b) The shareholder fairly and adequately represents the interests of the corporation in enforcing the right of the corporation.
> (c) The shareholder continues to be a shareholder until the time of judgment, unless the failure to continue to be a shareholder is the result of corporate action in which the former shareholder did not acquiesce and the derivative proceeding was commenced *prior* to the termination of the former shareholder's status as a shareholder.

M.C.L. § 450.1492(a)(emphasis added).

As a former shareholder, Plaintiff has no standing to bring a derivative action under § 450.1492(a).

Although it appears his status as a former shareholder may have been the result of corporate action in which he did not acquiesce, Plaintiff did not begin this lawsuit prior to the termination of his status as a shareholder. For these reasons the Court finds allowing Plaintiff to amend his complaint to include claims under § 450.1489 and § 450.1541 would be futile.

### b. Tortious Interference/Retaliation

Plaintiff's amended complaint includes a tortious interference/retaliation claim (Count V). Plaintiff's claim rests upon Defendants' alleged scheme to undermine the financial status of LRC and threaten Plaintiff. As a result of the scheme Plaintiff says he lost his job, stock, and salary as an officer of LRC. Plaintiff does not specifically identify

16

which Defendants were "involved."  The Court notes, however, that Plaintiff could only have a claim against Dunn because Holley, LRC, and the LRC Board are not proper parties.

A claim for tortious interference with business relations arises where the defendant, through improper conduct, causes a third party not to enter into or continue a business relationship.  *Winiemko v. Valenti*, 203 Mich.App. 411, 416-17 (Mich.App. 1994).  Under Michigan law, the elements of tortious interference are: (1) the existence of a valid business relationship (not necessarily evidenced by an enforceable contract) or expectancy; (2) knowledge of the relationship or expectancy on the part of the defendant interferer; (3) an intentional interference inducing or causing a breach or termination of the relationship expectancy; and (4) resulting damage to the party whose relationship or expectancy has been disrupted.  *Wausau Underwriters Inc. Co. v. Vulcan Dev., Inc.*, 323 F.3d 396, 404 (6th Cir. 2003).  Thus, an essential element is the defendant's intentional interference with the business relationship.

The first and second elements are met.  Defendants were aware of Plaintiff's business relationship with LRC.  However, the third element - intentional interference- requires a particularized inquiry.  Michigan Courts require that a plaintiff show that the defendant committed a *per se* wrongful act or a lawful act with malice, unjustified in the law.  *Wausau*, 323 F.3d at 404.  A *per se* wrongful act is defined as "an act inherently wrongful or an act that can never be justified under any circumstances."  A lawful act done with malice and without justification, must be proven by presenting specific affirmative action by the defendant that corroborates the improper motive of the interference*.  BPS Clinical Laboratories v. Blue Cross & Blue Shield of Michigan*, 217

17

Mich.App. 687, 699 (Mich.App. 1996). Thus, the Court must determine whether, viewing the facts in a light most favorable to Plaintiff, Plaintiff stated a claim that Defendants committed acts that were wrongful *per se* or with malice.

Plaintiff does not specifically allege that Defendants acted with malice or that their actions were wrongful *per se*. Plaintiff also fails to allege that Defendants actions were unjustified under the law. He only states that Defendants' threats caused him to resign from his position at LRC. While threatening to sue or fire someone may not on its face rise to the level of "*per se*" wrongful, Plaintiff claims that Defendants did so in retaliation because he exposed their "scheme."

In the context of Rule 15(a) and a motion to dismiss, however, a claim should only be dismissed or deemed futile if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). The Court is not persuaded that Plaintiff can prove no set of facts to support his tortious interference claim. Accordingly, the Court will allow Plaintiff to go forward on this claim.

## V.     CONCLUSION

For the foregoing reasons, Defendants' Motions to Dismiss are **GRANTED** in part and **DENIED** in part. Plaintiff's Motion to Amend is **GRANTED** in part. The case will proceed on Plaintiff's tortious interference claim only, against Dunn. Plaintiff is required to filed an Amended Complaint that sets forth the specific allegations addressed above. The Amended Complaint is to be filed by July 20, 2007.

**IT IS SO ORDERED**.

S/Victoria A. Roberts
                                                Victoria A. Roberts
                                                United States District Judge

Dated: July 6, 2007

| The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on July 6, 2007.

s/Carol A. Pinegar
Deputy Clerk |
|---|